## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**MARK W. DOBRONSKI**,

       Plaintiff,

v.

**TOTAL INSURANCE BROKERS,
LLC**, and **GAVIN DOMINIC
SOUTHWELL**,

       Defendants.

Case No. **21-cv-10035**

Honorable Judith E. Levy
United States District Judge

Honorable Curtis Ivy, Jr.
United States Magistrate Judge

---

Mark W. Dobronski
Post Office Box 85547
Westland, Michigan 48185-0547
(734) 641-2300
markdobronski@yahoo.com
Plaintiff *In Propria Persona*

Andrew J. Kolozvary (P68885)
Theresa A. Munaco (P81562)
Dykema Gossett PLLC
400 Renaissance Center, 37th Floor
Detroit, Michigan 48243-1601
(313) 568-6800
akolozsvary@dykema.com
tmunaco@dykema.com
Attorneys for Defendants

---

### <u>FIRST AMENDED COMPLAINT</u>

NOW COMES the Plaintiff, MARK W. DOBRONSKI, appearing *in propria*

*persona*, and for his first amended complaint against Defendants alleges:

1.  This matter arises under the Telephone Consumer Protection Act of 1991

("TCPA"), 47 U.S.C. § 227, *et seq.* and the Michigan Home Solicitation Sales Act

("MHSSA"), M.C.L. § 445.101, *et seq.*

## Parties, Jurisdiction, and Venue

2. Plaintiff is an individual, of the age of majority, a citizen of the United States of America, is a resident of Lima Township, Washtenaw County, Michigan, and has a place of business in the City of Westland, Wayne County, Michigan.

3. Upon information and belief, Defendant TOTAL INSURANCE BROKERS, LLC ("TIB"), is a limited liability company organized and existing under the laws of the State of Florida, which is authorized to and does transact business in the State of Michigan, with a registered office located at 601 Abbot Road, East Lansing, Michigan 48823-3366.

4. Upon information and belief, Defendant GAVIN DOMINIC SOUTHWELL ("Southwell") is an individual, of the age of majority, is mentally competent, is not in the military service, resides at 1270 Parrilla de Avila, Tampa, Florida 33613-1082, is the Chief Executive Officer of Defendant TIB, and directly and knowingly participated in, approved and directed the illegal telemarketing described herein.

5. This Court has jurisdiction over the subject matter of this complaint and venue is proper in this Court, pursuant to M.C.L. § 600.1629(1)(b)(i), as the tortious or illegal conduct complained of occurred in this judicial district.

6. This Court has jurisdiction over Defendant TIB pursuant to M.C.L. §

2

600.715(2) as a result of the defendant doing or causing any act to be done, or consequences to occur, in the state resulting in an action for tort.

7. This Court has jurisdiction over Defendant Southwell pursuant to M.C.L. § 600.705(2) as a result of the defendant doing or causing any act to be done, or consequences to occur, in the state resulting in an action for tort.

### General Allegations

8. In response to widespread public outrage over intrusive telemarketing calls to homes and businesses, the United States Congress acted to prevent entities, like Defendant, from invading American citizen's privacy and to prevent abusive "robo-calls" by enacting the TCPA.

9. According to the Federal Communications Commission ("FCC"), "Unwanted calls and texts are the number one complaint to the FCC. There are thousands of complaints to the FCC every month on both telemarketing and robocalls."

10. Congress explicitly has found that robo-calling is an invasion of privacy.

11. In regard to such telephone solicitations, Senator Hollings of South Carolina, the primary sponsor of the bill, explained, "computerized calls are the scourge of modern civilization. They wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we

want to rip the telephone right out of the wall... these computerized telephone calls threaten our personal safety... These machines are out of control, and their use is growing by 30 percent every year.  It is telephone terrorism, and it has got to stop...." See *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* 17 FCC Rcd. 17459, 17474, fn. 90 (2002), quoting 137 Cong. Rec. 30,821-30,822 (Nov. 7, 1991).

12.  According to YouMail, Inc., a company which tracks robocall activity and publishes the YouMail Robocall Index, during calendar year 2019 there were 58.5 billion robocalls initiated across the United States -- that works out to 160.4 million robocalls each day; 6.7 million robocalls each hour; 111,370 robocalls per minutes; 1,856 robocalls per second; or 176.8 robocalls per man, woman and child in the United States. [Source: www.robocallindex.com].

13.  Congress found that telemarketing fraud has become a problem of such magnitude that the resources of the Government alone are not sufficient to ensure adequate consumer protection from such fraud; consumers and others are estimated to lose in excess of $40 billion a year in telemarketing fraud; and consumers are victimized by other forms of telemarketing deception and abuse.

14. In enacting the TCPA, Congress intentionally created a legally enforceable bounty system, not unlike *qui tam* statutes, to incentivize the assistance of aggrieved

4

private citizens to act as "private attorneys general" in enforcing federal law.

15. The TCPA, at 47 U.S.C. § 227(b)(1), promulgates in relevant part as follows:

> "Restrictions on use of automated telephone equipment
>
> (1) Prohibitions It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States—
>
> (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice – . . .
>
> (iii) to any telephone number assigned to a paging service, **cellular telephone service**, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call, unless such call is made solely to collect a debt owed to or guaranteed by the United States. . . ." [Emphasis added.]

16. Pursuant to authority delegated by the Congress to the FCC under the TCPA at 47 U.S.C. § 227(b)(2), the FCC has adopted regulations to implement and carry out the TCPA.

17. The TCPA regulations, at 47 C.F.R. § 64.1200, promulgate in relevant part:

> "(a) No person or entity may:
>
> (1) Except as provided in paragraph (a)(2) of this section, initiate any telephone call (other than a call made for

5

emergency purposes or is made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice; . . .

(iii) To any telephone number assigned to a paging service, **cellular telephone service**, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call...

(2) Initiate, or cause to be initiated, any telephone call that includes or introduces an advertisement or constitutes telemarketing, using an automatic telephone dialing system or an artificial or prerecorded voice, to any of the lines or telephone numbers described in paragraphs (a)(1)(i) through (iii) of this section, other than a call made with the prior express written consent of the called party or the prior express consent of the called party when the call is made by or on behalf of a tax-exempt nonprofit organization, or a call that delivers a "health care" message made by, or on behalf of, a "covered entity" or its "business associate," as those terms are defined in the HIPAA Privacy Rule, 45 CFR 160.103.

(3) Initiate any telephone call to any residential line using an artificial or prerecorded voice to deliver a message without the prior express written consent of the called party, unless the call;

(i) Is made for emergency purposes;

(ii) Is not made for a commercial purpose;

(iii) Is made for a commercial purpose but does not include or introduce an advertisement or constitute telemarketing;

(iv) Is made by or on behalf of a tax-exempt nonprofit organization; or

(v) Delivers a "health care" message made by, or on behalf of, a "covered entity" or its "business associate," as those terms are defined in the HIPAA Privacy Rule, 45 CFR 160.103." [Emphasis added.]

18. The TCPA regulations at, 47 C.F.R. § 64.1601, promulgate in relevant

part:

"(e) Any person or entity that engages in telemarketing, as defined in section 64.1200(f)(10) **must** transmit caller identification information.

(1) For purposes of this paragraph, **caller identification information must include either CPN or ANI, and, when available by the telemarketer's carrier, the name of the telemarketer**. It shall not be a violation of this paragraph to substitute (for the name and phone number used in, or billed for, making the call) the name of the seller on behalf of which the telemarketing call is placed and the seller's customer service telephone number. **The telephone number so provided must permit any individual to make a do-not-call request during regular business hours.**

(2) Any person or entity that engages in telemarketing is prohibited from blocking the transmission of caller identification information.": [Emphasis added.]

19. The TCPA, at 47 U.S.C. § 227(b)(3), provides for a private right of action,

as follows:

"PRIVATE RIGHT OF ACTION. **A person or entity** may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State –

(A) an action based on a violation of this **subsection or the**

7

**regulations prescribed under this subsection** to enjoin such violation,

(B) an action to recover for actual monetary loss from such a violation, or to receive $500 in damages **for each such violation**, whichever is greater, or

(C) both such actions.

If the court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph." [Emphasis added.]

20. Pursuant to Congressional mandate set forth at 47 U.S.C. § 227(c)(1), the FCC adopted regulations establishing a national "do not call" database and prohibiting any person from making or transmitting a telephone solicitation to the telephone number of any subscriber included in such database, which regulations are set forth at 47 C.F.R. § 64.1200(c), and promulgate in relevant part:

"No person or entity shall initiate any telephone solicitation to:...

"(2) A residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government...."

21. The "do not call" proscriptions also are applicable to cellular or wireless telephone numbers, as set forth at 47 C.F.R. § 64.1200(e), which states:

8

> "The rules set forth in paragraph (c) and (d) in this section
> are applicable to any person or entity making telephone
> solicitations or telemarketing calls to wireless telephone
> numbers...."

22. The FCC has held that telephone subscribers who have listed their wireless telephone number on the national do-not-call list are deemed to be "residential subscribers". <u>See</u> *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* 18 FCC Rcd. 14014, 14039, ¶ 36 (2003).

23. Additionally, the TCPA, at 47 U.S.C. § 227(c)(5), as it relates to telephone numbers appearing of the do-not-call list, provides for a private right of action, as follows:

> "Private right of action.  A person who has received more
> than one telephone call within any 12-month period by or
> on behalf of the same entity in **violation of the regulations
> prescribed under this subsection** may, if otherwise
> permitted by the laws or rules of court of a State bring in an
> appropriate court of that State—
>
> (A) an action based on a violation of the regulations
> prescribed under this subsection to enjoin such violation,
>
> (B) an action to recover for actual monetary loss from such
> a violation, or to receive up to $500 in damages **for each
> such violation**, whichever is greater, or
>
> (C) both such actions.
>
> It shall be an affirmative defense in any action brought

9

under this paragraph that the defendant has established and implemented, with due care, reasonable practices and procedures to effectively prevent telephone solicitations in violation of the regulations prescribed under this subsection. If the court finds that the defendant willfully or knowingly violated the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph."

24. The MHSSA, at M.C.L. § 445.111a(5), promulgates:

". . . A telephone solicitor shall not make a telephone solicitation to a residential telephone subscriber whose name and residential telephone number is on the then-current version of the federal [do-not-call] list."

25. The MHSSA, at M.C.L. § 445.111b, promulgates in relevant part:

"(1) At the beginning of a telephone solicitation, a person making a telephone solicitation to a residential telephone subscriber shall state his or her name and the full name of the organization or other person on whose behalf the call was initiated and provide a telephone number of the organization or other person on request. A natural person must be available to answer the telephone number at any time when telephone solicitations are being made..."

26. The MHSSA, at M.C.L. § 445.111c, promulgates in relevant part as follows:

" (1) It is an unfair or deceptive act or practice and a violation of this act for a telephone solicitor to do any of the following:...

(f) Fail to comply with the requirements of section 1a or

10

1b.

(2) ... [A] person who knowingly or intentionally violates this section is guilty of a misdemeanor punishable by imprisonment for not more than 6 months or a fine of not more than $500.00, or both.

(3) A person who suffers loss as a result of violation of this section may bring an action to recover actual damages or $250.00, whichever is greater, together with reasonable attorney fees."

27.   Plaintiff's cellular telephone number (734-XXX-9671) is listed on the National Do Not Call Registry maintained by the U.S. Federal Trade Commission pursuant to 16 C.F.R. Part 310 and has been so listed continuously since at least December 9, 2004 and at all times relevant hereto.

28.   By listing his cellular telephone number on the National Do Not Call Registry, Plaintiff has given constructive notice to the world, including the Defendants, that Plaintiff does not wish to receive telephone solicitations or robocalls at his cellular telephone number.

29.   The FCC has issued a declaratory ruling defining "called party" as "the subscriber, i.e., the consumer assigned the telephone number dialed and billed for the call, or the **non-subscriber customary user of a telephone number included in a family or business calling plan**." *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, CG Docket No. 02–278, WC Docket No.

11

07–135, FCC 15–72, 2015 WL 4387780, at *26 ¶ 73 (FCC July 10, 2015) [Emphasis added].

30.  At no time relevant hereto has Plaintiff or any other authorized person requested, consented, permitted, or authorized the contact from the Defendants.

31.  At no time has Plaintiff provided permission to the Defendants to engage in telephone solicitation with the Plaintiff via telephone.

32.  The Defendants have subjected themselves to Michigan's specific personal jurisdiction in TCPA cases by directing calls to telephone numbers with Michigan area codes that were received by Michigan residents while those residents were present in Michigan.

33.  Pursuant to 47 U.S.C. § 217, the act, omission, or failure of any officer, agent, or other person acting for or employed by an common carrier or user, acting within the scope of his employment, shall in every case also be deemed to be the act, omission, or failure of such carrier or user as well as that of the person.

34.  Courts are legally bound to give great deference to the FCC's interpretations of the TCPA and its own regulations.

35.  The FCC has clarified that sellers may be held vicariously liable for violations of the TCPA by third-party telemarketers that initiate calls to market the seller's products or services, declaring as follows:

12

> "[A] company on whose behalf a telephone solicitation is made bears the responsibility for any violation of our telemarketing rules and calls placed by a third party on behalf of that company are treated as if the company itself placed the call."

*In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Declaratory Ruling, 20 FCC Rcd 13664, 13667, ¶ 7 (2005).

36. When considering individual corporate officer liability, other Courts have agreed that a corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. *See, e.g., Jackson Five Star Catering, Inc. v. Beason,* No. 10-10010, 2013 U.S. Dist. LEXIS 155985, *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA where they had direct, personal participating in or personally authorized the conduct found to have violated the statute.") (internal citation omitted); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415-16 (D.MD. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

37. It is well settled under Michigan law that corporate employees and officials are personally liable for all tortious and criminal acts in which they participate, regardless of whether they are acting on their own behalf or on behalf of a corporation. A corporate officer or director is, in general, personally liable for all

13

torts which he authorizes or directs or in which he participates, notwithstanding that he acted as an agent for the corporation and not on his own behalf.

38.   Here, upon information and belief, Defendant Southwell personally directed, participated in, and authorized the automated telemarketing contact.

39.   Defendant Southwell had personal control of the telephone solicitation activity of Defendant TIB, and in particular, he had the ability to cease the telephone solicitation activity.

40.   Although Defendant Southwell knew or reasonably should have known that the tortious conduct under his control could injure Plaintiff, Defendant Southwell negligently failed to take or order appropriate action to avoid causing the injury.

41.   Defendant Southwell was fully knowledgeable of the illegal telemarketing activities being taken by Defendant TIB and/or its agents, but failed to take appropriate action to curtail the illegal activities. As but one example, despite Defendant Southwell being fully aware that Defendant TIB and/or its agents were violating, *inter alia*, 16 C.F.R. § 310.4(a)(8) and 47 C.F.R. § 64.1601(e)(1) by failing to provide caller information displaying a telephone number which would permit any individual to make a do-not-call request during regular business hours, Defendant Southwell willfully allowed Defendant TIB and/or its agents to provide caller identification information displaying a telephone number which, when dialed back,

14

would either be busy or ring and not be answered.

42. Defendant Southwell knew that the third-party telemarketers utilized by Defendant TIB were engaging in telephone solicitations in violation of the TCPA, as Defendant Southwell had received complaints from his own agents regarding the telephone solicitations, but Defendant Southwell took no action to curtail the illegal telemarketing activities.

43. Defendants TIB and Southwell were aware of, ratified, and benefitted from the tortious conduct.

44. For each and every call alleged herein initiated to Plaintiff's telephone line, Plaintiff suffered the injury of invasion of privacy and intrusion on Plaintiff's right of seclusion.

45. For each and every call alleged herein initiated to Plaintiff's telephone line, Plaintiff suffered the injury of the occupation of the telephone line by unwelcome calls, making the phone unavailable for legitimate callers or outgoing calls, including emergency calls, when the telephone line was seized by Defendants' calls.

46. For each and every call alleged herein initiated to Plaintiff's telephone line, Defendants caused an injury in the form of a nuisance and annoyance to the Plaintiff. For calls that were answered, Plaintiff had to go to the unnecessary trouble of answering them. Even for unanswered calls, Plaintiff had to deal with missed call

15

notifications and call logs that reflected the unwanted calls. This also impaired the usefulness of these features on Plaintiff's telephone, which features are designed to inform the user of important missed communications.

47. Each and every call placed without consent by Defendants alleged herein to Plaintiff's telephone line resulted in the injury of a trespass to Plaintiff's chattel, namely Plaintiff's telephone line and its telephone services.

48. For purposes of the TCPA, the FCC has defined "willfully or knowingly" to mean that the violator knew that he was doing the act in question, in this case, initiating a telephone solicitation, irrespective of any intent to violate the law. A violator need not know that his action or inaction constitutes a violation; ignorance of the law is not a defense or mitigating circumstance.

49. Defendant TIB has been sued on numerous occasions in federal district courts across the United States for violations of the TCPA stemming from illegal robocalls to consumers. As such, Defendant TIB is on notice of its illegal conduct.

50. Upon information and belief, Defendant TIB is a subsidiary of Health Plan Intermediaries Holdings, LLC. ("HPIH").

51. Upon information and belief, Defendant Southwell is the President and Chief Executive Officer of HPIH.

52. HPIH has been the subject of numerous state regulatory agency

16

investigations and enforcement actions stemming from illegal telephone solicitations via robocalls.

## Allegations Specific to this Complaint

53. Defendant TIB is engaged in the business of marketing health insurance products.

54. Upon information and belief, as part of its marketing program, Defendant TIB engages the services of third-party telemarketers, usually located in the Asian continent in order to take advantage of the very low wages paid in those nations, to engage in soliciting consumers and developing prequalified sales leads for Defendant TIB.

55. Upon the third-party telemarketer prequalifying a prospect, the call is then "warm transferred" to a licensed insurance agent employed by or acting on behalf of Defendant TIB.

56. Over the past six months, Plaintiff has received no less than 100 telephone calls from third-party telemarketers, most likely Asian nationals, speaking poor English, identifying themselves as being with "Medicare Help Center," "Medicare Health Center," "Medicare Benefits," "Senior Benefits," "Health Market," or other similar sounding generic names, attempting to prequalify Plaintiff for Medicare supplemental insurance.

17

57. Although unknown to Plaintiff, Defendants TIB and Southwell know the identity of the third-party telemarketers which they have hired or contracted.

58. Defendants TIB and Southwell and/or its third-party telemarketers know the dates and times of the telemarketing calls initiated by Defendant TIB's third-party telemarketers to Plaintiff's cellular telephone number, and Plaintiff reserves the right to amend or supplement its Complaint to include such additional calls identified during the course of discovery.

## Call Number 1

59. On November 24, 2020 at approximately 10:13 A.M., Defendants or Defendants' third-party telemarketer initiated or caused to be initiated a call to Plaintiff's cellular telephone.

60. The caller identification number displayed was 409-434-5836 and no caller identification name was provided.

61. Upon answering the incoming telephone call, Plaintiff observed that there were several seconds of silence after Plaintiff said "hello" before a telemarketer identified himself as "Paul on behalf of Health Markets." The described delay is indicative of an automatic telephone dialing system being utilized.

62. "Paul" then attempted to pre-qualify Plaintiff, asking whether Plaintiff had Medicare Plan A or Plan B coverage; pre-existing health issues; zip code; age; name;

18

and date of birth.

63.  In an effort to better identify the caller, Plaintiff supplied "Paul" with controlled identifying information, including a bogus name of "Otis Daniels", an investigative technique termed a "canary trap."

64.  "Paul" stated that a licensed agent would be calling back and the call terminated.

65.  Upon the termination of the telephone call, Plaintiff immediately called back telephone number 409-434-5836, which repeatedly rang and was not answered.

## Call Number 2

66.  On November 25, 2020, at approximately 2:13 P.M., Defendants or Defendants' third-party telemarketer initiated or caused to be initiated a call to Plaintiff's cellular telephone.

67.  The caller identification number displayed was 800-920-0631 and no caller identification name was provided.

68.  Upon answering the incoming telephone call, Plaintiff observed that there were several seconds of silence after Plaintiff said "hello" before a telemarketer came on the line and asked to speak with "Otis Daniels" and then identified herself as "Tamara with Health Market Partnership."  The described delay is indicative of an automatic telephone dialing system being utilized. "Tamara" then stated that she was

transferring the call to a licensed agent.

69. A male telemarketer who identified himself as "Nate Johnson... with TIB Insurance" then came on the line and began discussing Medicare insurance products. Johnson stated that he was a licensed insurance agent in the State of Ohio.

70. After the call terminated, Plaintiff called back telephone number 800-920-0631 and received a busy signal. Repeated subsequent attempts over the past three months to call telephone number 800-920-0631 all received busy signals.

## COUNT I
## VIOLATION OF THE TCPA - ROBOCALL

71. Plaintiff incorporates the allegations of paragraphs 1 through 70, *supra.*

72. The telephone calls alleged and identified as Call Number 1 and Call Number 2, *supra*, were each in violation of the TCPA, specifically 47 U.S.C. § 227(b)(1)(A)(iii) and/or 47 C.F.R. § 64.1200(a)(1)(iii), as Defendants or Defendants' third-party telemarketer initiated a telephone call using an automatic telephone dialing system to a telephone number assigned to a cellular telephone service without the prior express written consent of the called party and there being no emergency purpose.

73. The aforesaid violations of the TCPA were wilful and/or knowing.

## COUNT II
## VIOLATION OF THE TCPA - BAD CALLER ID

74. Plaintiff incorporates the allegations of paragraphs 1 through 73, *supra.*

75. The telephone calls alleged and identified as Call Number 1 and Call Number 2, *supra*, were in violation of the TCPA, specifically 47 C.F.R. § 64.1601(e)(1), as Defendants or Defendants' third-party telemarketer failed to provide caller identification information displaying a telephone number which would permit any individual to make a do-not-call request during regular business hours.

76. The aforesaid violations of the TCPA were wilful and/or knowing.

## COUNT III
## VIOLATION OF THE TCPA - DO NOT CALL

77. Plaintiff incorporates the allegations of paragraphs 1 through 76, *supra.*

78. The telephone calls alleged and identified as Call Number 1 and Call Number 2, *supra*, were in violation of the TCPA, specifically 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(c)(2), as Defendants or Defendants' third-party telemarketer initiated a telephone call to a telephone number registered on the national do-not-call registry.

79. The aforesaid violations of the TCPA were wilful and/or knowing.

## COUNT IV
## VIOLATION OF THE MHSSA

80. Plaintiff incorporates the allegations of paragraphs 1 through 79, *supra.*

81. The telephone calls alleged and identified as Call Number 1 and Call

21

Number 2, *supra*, were in violation of the MHSSA, specifically M.C.L. § 445.111a(5), as Defendants or Defendants' third-party telemarketer made a telephone solicitation to a residential telephone subscriber whose name and residential telephone number is on the federal do-not-call list; M.C.L. 445.111b(1), and/or Defendants or Defendants' telemarketer did not at the beginning of the telephone solicitation state his or her name and the full true name of the organization on whose behalf the call was initiated and provide a telephone number of the organization on request.

## PRAYER FOR RELIEF

WHEREFORE, the aforesaid premises considered, Plaintiff prays that this Court enter a judgment for Plaintiff and against the Defendants, jointly and severally, as follows:

A.    1. As to Count I: Damages in the amount of $500.00 for each of the 2 TCPA violations alleged, for damages of $1,000.00, which amount shall be trebled because the violations were wilful or knowing; for total damages of $3,000.00.

2. As to Count II: Damages in the amount of $500.00 for the 2 TCPA violations alleged, for damages of $1,000.00, which amount shall be trebled because the violation was wilful or knowing; for total damages of $3,000.00.

3. As to Count III: Damages in the amount of $500.00 for each of the

2 TCPA violations alleged, for damages of $1,000.00, which amount shall be trebled because the violations were wilful or knowing; for total damages of $3,000.00.

4. As to Count IV: Damages in the amount of $250.00 for each of the 2 MHSSA violations alleged, for damages of $500.00.

The cumulative total amount of damages claimed in this action is $9,500.00, and in the event of default judgment is the sum certain that will be sought.

B. An award of Plaintiff's taxable costs and disbursements incurred in the filing and prosecution of this action;

C. An injunction enjoining Defendants from initiating any telephone calls to Plaintiff's cellular telephone line.

D. Interest accruing from the date of filing until paid at the statutory rate; and,

E. Such other and further relief as this Court deems necessary, reasonable, prudent and proper under the circumstances.

Respectfully submitted,

Dated: March 1, 2021

Mark W. Dobronski
Post Office Box 85547
Westland, Michigan 48185-0547
(734) 641-2300
markdobronski@yahoo.com
Plaintiff *In Propria Persona*

23

## VERIFICATION

State of Michigan  )
                   )  ss;
County of Wayne  )

    MARK W. DOBRONSKI, being first duly sworn, does depose at state, as follows:

    1.  I am the Plaintiff in the foregoing matter, of the age of majority, and I have direct and personal knowledge of the facts in dispute.

    2.  I have read the First Amended Complaint in the foregoing matter, and I know the contents thereof.  The matters stated in the First Amended Complaint are true in substance and in fact, except as to those matters stated to be upon information and belief, and as to those matters I believe them to be true.

    3.  If sworn as a witness, affiant can testify competently to the facts as set forth in the Complaint.

    Further, affiant sayeth naught.

                    Mark W. Dobronski

Subscribed and sworn to before me
this __1st__ day of March, 2021.

Sandra J. Clarke
Notary Public
State of Michigan, Lenawee County
Acting in Wayne County
My Commission Expires November 23, 2023

## **CERTIFICATE OF SERVICE**

I hereby certify that on **March 1, 2021**, I caused copies of the foregoing *First Amended Complaint* to be served upon all parties and/or attorneys of record to the above-captioned cause herein by sending same in a sealed envelope, with first-class postage fully prepared thereupon, and deposited in the United States Mail, addressed as follows:

> Andrew J. Kolozvary, Esq.
> Theresa A. Munaco, Esq.
> Dykema Gossett PLLC
> 400 Renaissance Center, 37th Floor
> Detroit, Michigan 48243-1601

Mark W. Dobronski