UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARK W. DOBRONSKI,                      Case No.: 21-10035
    Plaintiff,
v.                                      Judith E. Levy
                                        United States District Judge
TOTAL INSURANCE
BROKERS, LLC, and GAVIN                 Curtis Ivy, Jr.
DOMINIC SOUTHWELL,                      United States Magistrate Judge
    Defendants.
_____/

**REPORT AND RECOMMENDATION ON DEFENDANTS' MOTION TO
DISMISS (ECF No. 5), PLAINTIFF'S AMENDED COMPLAINT (ECF No.
11), AND DEFENDANTS' MOTION TO STRIKE (ECF No. 16)**

## I.    PROCEDURAL HISTORY

Plaintiff Mark W. Dobronski filed this Telephone Consumer Protection Act

("TCPA") and Michigan Home Solicitation Sales Act ("MHSSA") case on

December 1, 2021, in the 18th District Court located in Westland, Michigan.

Defendants timely removed the case to this Court on January 8, 2021.  (ECF No.

1).  Plaintiff is proceeding without the assistance of counsel.  On January 22, 2021,

Defendants Total Insurance Brokers, LLC ("TIB") and Gavin Dominic Southwell

("Southwell") filed a motion to dismiss the claims against Southwell for lack of

personal jurisdiction and for failure to state a claim, to dismiss Plaintiff's "Bad

Caller ID" claim for failure to state a claim, and to dismiss Plaintiff's claims for

treble damages.  (ECF No. 5).  Plaintiff timely filed a response to the motion.

(ECF No. 14).  He also filed an amended complaint on March 1, 2021.  (ECF No.

11).  Defendants filed a motion to strike and/or to dismiss the first amended

complaint.  (ECF No. 16).  Plaintiff timely responded to the motion.  (ECF No.

21).  This matter is now ready for report and recommendation.

For the reasons discussed below, the undersigned recommends Defendants'

motion to dismiss be granted in part and denied in part and Defendants' motion to

strike or dismiss the amended complaint be granted.

## II.    FACTUAL BACKGROUND

Plaintiff alleged the following in the original complaint.  On November 24,

2020, "Defendants or Defendants' third-party telemarketer" called Plaintiff's

cellular telephone.  The caller identification number was listed as 409-434-5836;

no additional caller identification information was provided.  Upon answering the

call, a telemarketer identified himself as "Paul on behalf of Health Markets"

inquiring about Plaintiff's Medicare plan.  Plaintiff gave "Paul" "controlled

identifying information, including a bogus name of 'Otis Daniels,' an investigative

technique termed a 'canary trap.'"  (ECF No. 1, PageID.19, at ¶¶ 49-53).  On

November 25, 2020, Plaintiff received a call from 800-920-0631, purported to be

either "Defendants or Defendants' third-party telemarketer.  During the ensuing

conversation, a telemarketer asked to speak with "Otis Daniels;" Plaintiff waited as

the telephone call was transferred to a licensed agent who identified himself as "Nate Johnson . . . with TIB Insurance." Mr. Johnson began discussing Medicare insurance options with Plaintiff. (*Id.* at PageID.20, at ¶¶ 56-60). Subsequent attempts to contact persons associated with both telephone numbers were unsuccessful—they either rang without end or provided a busy signal.

Plaintiff alleges his cellular telephone number has been listed on the National "Do Not Call" registry since December 9, 2004. (ECF No. 1, PageID.15, at ¶ 25). Plaintiff asserts that by listing his number on the registry, he gave "constructive notice to the world, including the Defendants" that he did not wish to receive telephonic solicitations.

Plaintiff alleges TIB is a Florida corporation with a registered office in Michigan. Southwell is the CEO of TIB and resides in Tampa, Florida. Plaintiff alleges Southwell "directly and knowingly participated in, and approved and directed the illegal telemarketing" described in the complaint. (ECF No. 1, PageID.9, at ¶¶ 3, 4). According to Plaintiff, and "upon information and belief," Southwell "personally directed, participated in, and authorized the automated telemarketing contact." Further, Plaintiff alleges "Southwell has personal control of the telephone solicitation activity of co-defendant [TIB], including the ability to cease the telephone solicitation activity. (*Id.* at PageID.17, at ¶¶ 35-36).

Plaintiff brought 4 claims – Violation of the TCPA – Robocall; Violation of the TCPA – Bad Caller ID; Violation of the TCPA – Do Not Call; and Violation of the MHSSA. (*Id.* at PageID.20-22). For each TCPA claim, Plaintiff maintains the violations were "wilful [sic] and/or knowing."

In the proposed amended complaint, in addition to the allegations described above, Plaintiff alleges this Court has jurisdiction over Southwell pursuant to M.C.L. § 600.705(2) as a result of his "doing or causing any act to be done, or consequences to occur, in the state resulting in an action for tort." (ECF No. 11, PageID.146, at ¶ 7). He further alleges "Defendants have subjected themselves to Michigan's specific personal jurisdiction in TCPA cases by directing calls to telephone numbers with Michigan area codes that were received by Michigan residents while those residents were present in Michigan." (*Id.* at PageID.155, at ¶ 32). Plaintiff asserts Southwell "knew or reasonably should have known that the tortious conduct under his control could injure Plaintiff" and "Southwell negligently failed to take or order appropriate action to avoid causing" injury. Further, he contends "Southwell was fully knowledgeable of the illegal telemarketing activities" of TIB "but failed to take appropriate action." (*Id.* at PageID.157, at ¶¶ 40-41).

Plaintiff brings the same claims as stated in the original complaint. (*Id.* at PageID.163-65).

4

## III.   ANALYSIS AND RECOMMENDATIONS

### A.   Standard of Review

On a motion to dismiss for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2), the plaintiff has the burden of establishing that the exercise of jurisdiction over the defendant is proper.  *Neogen Corp. v. Neo Gen Screening, Inc.,* 282 F.3d 883, 887 (6th Cir. 2002).  Where, as here, there has been no evidentiary hearing regarding personal jurisdiction, a plaintiff "need only make a *prima facie* showing of jurisdiction."  *Id.* (quoting *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir.1996)) (internal quotation marks omitted). To make the requisite *prima facie* showing, Plaintiff must "establish[ ] with reasonable particularity sufficient contacts between [each Defendant] and the forum state to support jurisdiction."  *Id.*  In deciding a motion under Rule 12(b)(2), the Court "will construe the facts in the light most favorable to the nonmoving party." *Id.*

Defendants also bring their motion to dismiss pursuant to Rule 12(b)(6). When deciding a motion to dismiss under Rule 12(b)(6), the Court must "construe the complaint in the light most favorable to plaintiff and accept all allegations as true." *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009) (internal quotation omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (concluding that a plausible claim need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action"). Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *16630 Southfield Ltd., P'Ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013).

Furthermore, the Court holds *pro se* complaints to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). However, even in pleadings drafted by *pro se* parties, "'courts should not have to guess at the nature of the claim asserted.'" *Frengler v. Gen. Motors*, 482 F. App'x 975, 976-77 (6th Cir. 2012) (quoting *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)). "[C]ourts may not rewrite a complaint to include claims that were never presented ... nor may courts construct the Plaintiff's legal arguments for him. Neither may the Court 'conjure up unpled allegations[.]'" *Rogers v. Detroit Police Dept.*, 595 F. Supp. 2d 757, 766 (E.D. Mich. 2009); *see also, Evans v. Mercedes Benz Fin. Servs., LLC*, No. 11-11450, 2011 WL 2936198, at *2 (E.D. Mich. July

21, 2011) ("Even excusing plaintiff's failure to follow Rules 8(a)(2) and 10(b), a *pro se* plaintiff must comply with basic pleading requirements, including Rule 12(b)(6).").

    B.    <u>Amended Complaint</u>

Under Fed. R. Civ. P. 15(a)(1), a plaintiff may amend the complaint once as a matter of course either within 21 days of service or 21 days after service of a responsive pleading or motion under Rule 12(b).  Fed. R. Civ. P. 15(a)(1)(A)-(B).  Rule 15(a) "gives plaintiffs an absolute right to amend a complaint before a 'responsive pleading' is served." *Pertuso v. Ford Motor Credit Co*., 233 F.3d 417, 421 (6th Cir. 2000).

Defendants filed their motion to dismiss and first answer to the complaint on February 1, 2021.  (ECF Nos. 5, 6).  On February 9, 2021, Defendants filed an amended answer.  (ECF No. 10).  Plaintiff purports to have filed his amended complaint timely and as of right because he filed it within 21 days of Defendants' amended answer to the original complaint, on March 9, 2021.

The 2009 Amendment Advisory Committee Notes to Rule 15 instruct that "[t]he 21-day periods to amend once as a matter of course after service of a responsive pleading or after service of a designated motion are not cumulative.  If a responsive pleading is served after one of the designated motions is served, for example, there is no new 21-day period."  "These comments have been interpreted

to mean that the right to amend once as of right applies only to initial, not amended pleadings." *Synthes USA Sales, Inc. v. Taylor*, 2012 WL 928190, at *1 (M.D. Tenn. Mar. 19, 2012). Consequently, the time for Plaintiff to amend as of right had run before he filed his amended complaint.

In such an instance, a plaintiff must obtain the consent of the opposing parties or leave from the court. Fed. R. Civ. P. 15(a)(2). Plaintiff neither obtained Defendants' consent to amend nor sought leave to amend the complaint. For this reason, the undersigned recommends Defendants' motion to strike be granted and the improperly filed amended complaint be stricken.

In the alternative, for the reasons explained below, should the Court consider the amended complaint as a request for leave to amend, the undersigned recommends leave be denied because the amendment would be futile. "The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Leave to amend should be denied "if the amendment is brought in bad faith, for dilatory purposes, results in undue delay or prejudice to the opposing party or would be futile." *Crawford v. Roane*, 53 F.3d 750, 753 (6th Cir. 1995) (citing cases). "If the district court concludes that the pleading as amended could not withstand a motion to dismiss, then the court may deny the motion to amend as futile and save the parties and the court the expense of having to confront a claim doomed to failure from its outset." *Spigno v. Precision Pipeline, LLC*, 59 F. Supp. 3d 831, 834 (E.D.

Mich. 2014) (citing *Head v. Jellico Housing Auth.*, 870 F.2d 1117, 1123 (6th Cir. 1989)).  The standard for motions to dismiss is provided in detail above.

The undersigned will refer to the amended complaint in the analysis that follows as the "proposed amended complaint."

C.    Discussion

1.    Personal Jurisdiction

Southwell argues he should be dismissed from this case because Plaintiff did not sufficiently establish he is subject to this Court's jurisdiction.  Plaintiff focuses his position on the allegations asserted in the proposed amended complaint.  He argues Southwell directed calls to telephone numbers in Michigan and personally directed and was involved in the telephone calls to his cellular device, and thus subjected himself to Michigan's specific personal jurisdiction.  (ECF No. 14, PageID.186).

Plaintiff does not advance the Court has general personal jurisdiction over Southwell.[1]  Plaintiff argues the Court has specific, or limited, personal jurisdiction, "which is dependent on the defendant's case-related contacts to the jurisdiction."  *Evans v. Brown*, 2019 WL 9047225, at *2 (6th Cir. Dec. 6, 2019)

---

[1] General jurisdiction "is dependent on a defendant's generic connections to the State, such as whether the defendant resides there or regularly does business there."  *Evans v. Brown*, 2019 WL 9047225, at *2 (6th Cir. Dec. 6, 2019).

(citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)).  The undersigned will only address specific jurisdiction.

Where, as here, "a federal court's subject matter jurisdiction over a case stems from the existence of a federal question, personal jurisdiction over a defendant exists if the defendant is amenable to service of process under the [forum] state's long-arm statute and if the exercise of personal jurisdiction would not deny the defendant due process." *Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir. 2002) (citation omitted) (alteration in original).  "Of course, if jurisdiction is not proper under the Due Process Clause it is unnecessary to analyze jurisdiction under the state long-arm statute, and vice-versa." *Conn v. Zakharov*, 667 F.3d 705, 711-12 (6th Cir. 2012) (citing *Brunner v. Hampson*, 441 F.3d 457, 467 (6th Cir. 2006)). "The Due Process Clause requires that the defendant have sufficient 'minimum contact[s]' with the forum state" so that finding personal jurisdiction does not "offend traditional notions of fair play and substantial justice." *Id.* at 712 (citations omitted).  The Sixth Circuit has identified three considerations to determine whether limited personal jurisdiction extends to a defendant in a particular case:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Gerber v. Riordan*, 649 F.3d 514, 518 (6th Cir. 2011) (internal quotations omitted);
*Southern Machine Co. v. Mohasco Industries, Inc*., 401 F.2d 374, 381 (6th Cir.
1968).

According to Southwell, assertion of personal jurisdiction over him would
not comport with due process because there are no allegations that he purposefully
availed himself of the privilege of acting in Michigan.  More specifically, citing
*Visser v. Caribbean Cruise Line, Inc.*, 2020 WL 415847 (W.D. Mich. Jan. 27,
2020), Southwell argues the Court does not have personal jurisdiction over him
merely because it has jurisdiction over TIB and he serves as its CEO.  (ECF No. 5,
PageID.48-50).

The "purposeful availment" requirement is satisfied when the defendant's
contacts with the forum State "proximately result from actions by the defendant
*himself* that create a substantial connection" with the forum State, and when the
defendant's "conduct and connection with the forum are such that he should
reasonably anticipate being haled into court there."  *Beydoun v. Wataniya
Restaurants Holding, Q.S.C.*, 768 F.3d 499, 505–06 (6th Cir. 2014) (emphasis in
original) (internal quotations omitted).  The purposeful availment inquiry focuses
on "whether the defendant has engaged in some overt actions connecting the
defendant with the forum [S]tate."  *Id.* at 506 (internal quotations omitted).

Indeed, "it is well settled that jurisdiction over individual officers of a corporation cannot be predicated merely upon jurisdiction over the corporation." *Cunningham v. Rapid Response Monitoring Servs., Inc.*, 251 F. Supp. 3d 1187, 1209 (M.D. Tenn. 2017) (citing *Weller v. Cromwell Oil Co.*, 504 F.2d 927, 929 (6th Cir. 1974)).  However, where the individual officer is "actively and personally involved in the conduct giving rise to the claim," the exercise of personal jurisdiction over the officer may be appropriate if he purposely availed himself of the forum and the reasonably foreseeable consequences of that availment.  *Balance Dynamics Corp. v. Schmitt Industries, Inc.*, 204 F.3d 683, 698 (6th Cir. 2000).  Like in *Visser*, 2020 WL 415847, this action arises out of telephone calls placed to Plaintiff. "Accordingly, to satisfy the requirements for limited personal jurisdiction, Plaintiff[] must make a *prima facie* showing that [Southwell] caused or was somehow involved in those telephone calls." *Id.* at *4.

In the original complaint Plaintiff alleges Southwell, a resident of Tampa, Florida, "directly and knowingly participated in, and approved and directed the illegal telemarketing" described in the complaint.  (ECF No. 1, PageID.9, at ¶ 4). According to Plaintiff, and "upon information and belief," Southwell "personally directed, participated in, and authorized the automated telemarketing contact." Further, he alleged "Southwell has personal control of the telephone solicitation activity of co-defendant [TIB], including the ability to cease the telephone

solicitation activity." (*Id.* at PageID.17, at ¶¶ 35-36). In the amended complaint, Plaintiff adds that Southwell knew or should have known that injury would result to a Michigan resident because of TIB's telemarketing practices and that Southwell knew about the allegedly illegal telemarketing practices yet failed to take corrective action.

In the view of the undersigned, whether the Court has jurisdiction over Southwell is a closer call than he asserts.

Courts that have passed upon the issue have not created an altogether clear path. Plaintiff has filed similar TCPA actions in this Court. In one such action, *Dobronski v. SunPath, Ltd.*, 2020 WL 8840311 (E.D. Mich. July 27, 2020), the Court assessed the adequacy of Plaintiff's allegations to establish personal jurisdiction over two corporate officer defendants.[2] Plaintiff alleged the officer defendants "have personal control of the marketing activities of the defendant corporation, including the ability to cease the telemarketing activity," and that they were "actively and personally involved in the conduct giving rise to [Plaintiff's] claim[s], including formulating, directing, implementing and ratifying the telemarketing scheme" through which the calls at issue were placed to Plaintiff's cellular telephone. *Id.* at *6 (citations omitted). The Court concluded these allegations were sufficient to make a *prima facie* case of personal jurisdiction.

---

[2] Neither party addressed this case.

Other courts have made the opposite conclusion on similar allegations. Southwell relies in part on *Visser v. Caribbean Cruise Line, Inc.*, 2020 WL 415847 (W.D. Mich. Jan. 27, 2020). In *Visser*, the plaintiff sued two corporate defendants and an officer of one of the corporations, defendant Lambert, for violations of the TCPA. Lambert moved to dismiss for lack of personal jurisdiction. A few of the jurisdictional allegations found in the complaint were as follows: the defendants, including Lambert, "made, or caused to be made on their behalf, telephone calls" to the plaintiffs; the defendants do business in Michigan, and thus are within the Court's jurisdiction; the defendants employ or contract with agents to perform outbound telemarketing solicitations on their behalf; and "[u]pon information and belief Daniel Lambert caused the calls referenced . . . to be made on behalf of" the corporate defendants. *Id.* at *4-5. The court concluded, without consideration of the evidence provided by the parties, these allegations were insufficient to establish personal jurisdiction. There were no allegations of fact to support the bare assertion that Lambert caused the calls to the plaintiffs. The court concluded "Plaintiffs have simply alleged a conclusory statement about Lambert's personal responsibility for the calls. Thus, Plaintiffs' allegations in the complaint, standing alone, are not sufficient to establish with 'reasonable particularity' any contacts between Lambert and the State of Michigan, *see Neogen Corp.*, 282 F.3d at 887,

14

let alone contacts that satisfy Michigan's long-arm statute and due process." *Id.* at *5.

Similarly, in *Cunningham v. Local Lighthouse Corp.*, 2017 WL 4053759 (M.D. Tenn. Aug. 7, 2017), the plaintiff sued a corporation and two of its officers for alleged TCPA violations. The officers argued lack of personal jurisdiction. The plaintiff alleged the officers "(1) 'had direct, personal participation in causing the illegal telephone calls to be made as well as they directly authorized the illegal telemarketing calls to be made,' (2) 'failed to take efforts to implement appropriate policies or procedures designed to comply with the TCPA,' (3) 'refused to alter their business practices and continued to place automated calls to consumers,' and (4) 'authoriz[ed] and ratif[ied] the illegal telephone calls.'" *Id.* at *3. The plaintiff did not maintain that either officer ever placed a telephone call to a Tennessee resident, but the corporation admitted to placing telemarketing calls to Tennessee residents. The court concluded these allegations were not made with the required "reasonable particularity" to support a *prima facie* showing of personal jurisdiction over the officers. *Id.* at *4.

The allegations in these three cases are not markedly different from each other, nor very different from the allegations in this case. The distinctions that can be drawn between the cases are minimal and do not appear to bear on the ultimate conclusion regarding the adequacy of the jurisdictional allegations. Nevertheless,

15

in this instance, the undersigned concludes the Court need not decide whether

Plaintiff made a *prima facie* showing that Southwell personally availed himself of

the privilege of doing busines in Michigan because, as discussed below, Plaintiff

failed to state a claim to relief against him pursuant to Fed. R. Civ. P. 12(b)(6).

### 2. Failure to State a Claim – Defendant Southwell

The allegations against Southwell are detailed above—Southwell knew of,

directed, participated in, and authorized the alleged violating telemarketing calls.

Plaintiff raised claims under the TCPA (47 U.S.C. §§ 227(b)(1)(A) and (c)(5)) and

MHSSA (M.C.L. §§ 445.11a and 445.111b) against Southwell.[3]   Southwell asserts

these allegations are insufficient, pursuant to Fed. R. Civ. P. 12(b)(6), to state a

TCPA violation.  (ECF No. 5, PageID.50-54).  Plaintiff limited his response to

Southwell's personal jurisdiction argument and failed to address the failure to state

a claim argument.  (ECF No. 14, PageID.183-90).

"The TCPA and the MHSSA share a common element: making a telephone

call." *Visser*, 2020 WL 415847, at *8.  The TCPA prohibits a person from making

a telephone call to a cellular telephone number using an "automatic telephone

dialing system or an artificial or prerecorded voice."  47 U.S.C. § 227(b)(1)(A)(iii).

Section 227(c) of the TCPA provides, "[n]o person or entity shall initiate any

---

[3] Plaintiff also raised a claim under 47 C.F.R. § 64.1601(e)(1)—it is recommended below that this claim be dismissed for lack of private cause of action.  Thus, this claim will not be addressed here.

telephone solicitation to . . . [a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry. . . ."  Section 445.111a(5) of the MHSSA provides, "[a] telephone solicitor shall not make a telephone solicitation to a residential telephone subscriber whose name and residential telephone number is on the then-current version of the federal [do-not-call] list."  M.C.L. § 445.111a(5).  Section 445.111b(1) provides, "[a]t the beginning of a telephone solicitation, a person making a telephone solicitation to a residential telephone subscriber shall state his or her name and the full name of the organization or other person on whose behalf the call was initiated and provide a telephone number of the organization or other person on request."  M.C.L. § 445.111b(1).

As stated above, a plausible claim need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555.  The allegations must contain enough factual detail to allow the Court to draw a reasonable inference that the defendant is liable for the alleged violations.

Here, however, the allegations against Southwell are "labels and conclusions" attempting to pin liability on Southwell as well as TIB.  Any connection between Southwell and the telephone calls is based on speculation. The authority relied on by Southwell is persuasive and on point demonstrating

similar allegations are insufficient to state a claim to relief. *See, e.g.*, *Cunningham v. Rapid Response Monitoring Serv's, Inc.*, 251 F. Supp. 3d 1187, 1202 (M.D. Tenn. Apr. 26, 2017) (the allegations "do not detail any individual actions that would support his personal liability beyond the generic assertions that, as CEO of RRMS, [the defendant] was ultimately responsible for its involvement in any actionable calls."); *Visser*, 2020 WL 415847, at *8 (dismissing corporate officer defendant because allegations that he directed or participated in TCPA violations did not require the inference that the defendant caused or directed the calls to be made; the allegations were too conclusory); *Lucas v. Gotra*, 2019 WL 3349957, at *7 (S.D. Ohio July 25, 2019) (dismissing TCPA against corporate officers where plaintiff alleged they "personally formulated, [or] directed, [or] controlled, [or] had the authority to control, or participated in" the alleged violations). Because they are speculative, bare assertions, the claims against Southwell should be dismissed. The amended complaint allegations do not add factual detail, and therefore leave to amend should not be granted.

### 3.    47 C.F.R. § 64.1601(e)

Plaintiff's second cause of action (titled "Count III – Violation of the TCPA – Bad Caller ID), brought pursuant to 47 C.F.R. § 64.1601(e)(1), alleges Defendants or their third-party telemarketer failed to provide correct caller identification information.  (ECF No. 1, PageID.21).  The claim is identical in the

proposed amended complaint.  (ECF No. 11, PageID.163-4).  That regulation

provides, in pertinent part, "[a]ny person or entity that engages in telemarketing . . .

must transmit caller identification information[,]" and that "caller identification

information must include either [calling party number] or [automatic numbering

information], and, when available by the telemarketer's carrier, the name of the

telemarketer."  47 C.F.R. § 64.1601(e)(1).  The parties dispute whether 47 C.F.R. §

64.1601(e) confers a private right of action.

There have been a number of decisions, albeit non-binding, which have

analyzed both 47 C.F.R. § 64.1601(e) and the TCPA, 47 U.S.C. § 227, to

determine whether there is a right of action for a violation of § 64.1601(e).

Subsections (b) and (c) of the TCPA provide a private right of action for violations

of those provisions.  Pursuant to the undersigned's research, every court to pass

upon the question has ruled that § 64.1601(e) does not have a private right of

action as it does not fall under either subsection (b) or (c) of the TCPA.  Plaintiff's

theory,  to the contrary, is in essence: if the goal of subsection (c) of the TCPA (§

227(c)) is "to protect residential telephone subscribers' privacy rights to avoid

receiving telephone solicitations to which they object," then it follows § 64.1601(e)

falls under subsection (c) because having accurate caller identification will help the

consumer avoid the unwanted calls.  (ECF No. 14, PageID.194-97).

As observed in *Worsham v. Travel Options, Inc.*, 2016 WL 4592373, at \*3 (D. Md. Sept. 2, 2016), "subsection *c* directed the FCC to promulgate regulations aimed at establishment and operation of a national database of telephone numbers of residential subscribers who object to receiving telephone solicitations and, further, permitted the FCC to prohibit telephone solicitations to any number in the database." To that end, subsection (c) grants a right of private action to "[a] person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under [subsection (c)] . . . to enjoin such violation [and/or] . . . to receive up to $500 in damages for each such violation." 47 U.S.C. § 227(c)(5). The court in *Worsham*, after extensive discussion of the relevant regulations, concluded that the "rule in § 64.1601(e) appears to *support* consumers' enforcement efforts under the TCPA's subsection *c*, rather than to *create* a separate mechanism upon which a consumer can make an actionable claim." *Id.* at \*4 (emphasis in original). Courts in this district, after some analysis of their own, have followed this holding is disposing of this same Plaintiff's § 64.1601(e) claims. *See, e.g.*, *Dobronski v. Selectquote Ins. Serv's*, 462 F. Supp. 3d 784 (E.D. Mich. 2020); *Dobronski v. SunPath Ltd.*, 2020 WL 8840311 (E.D. Mich. July 27, 2020). These decisions are persuasive, and without any contrary authority, the undersigned recommends following these cases and dismissing the "Bad Caller ID" claim because there is no private right of

action for a violation of § 64.1601(e).  Further, leave to amend should be denied as raising the claim in an amended complaint would be futile.

### 4.  Treble Damages

Plaintiff's three TCPA claims (Counts I, III, and IV) allege the violations were "wilful [sic] and/or knowing."  (ECF No. 1, PageID.20-21).  Section 227(b)(3) and (c)(5) of the TCPA provide, "If the court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph."  47 U.S.C. § 227.  Because of the alleged willfulness, Plaintiff claims entitlement to treble damages.  Defendants argue the assertion of willfulness was insufficiently pleaded under Rule 12(b)(6), and thus the willfulness portion of the TCPA claims should be dismissed.  (ECF No. 5, PageID.56-59).

"The TCPA does not require any intent for liability except when awarding treble damages."  *Alea London Ltd. v. American Home Services, Inc.*, 638 F.3d 768, 776 (11th Cir. 2011).  However, the TCPA does not define or provide guidance as to what a willful or knowing violation requires—the Eleventh Circuit has.  "[T]he intent for treble damages does not require any malicious or wanton conduct, but rather is satisfied by merely 'knowing' conduct[]" that violates the statute.  *Id.*  A "willful" or "knowing" violation requires more than merely

knowing the call is being made. The defendant must know the call is being made to a person who did not consent to receive the call. Otherwise, the distinction between a violation of the TCPA and a willful or knowing violation would be negligible or nearly undetectable. *See Lary v. Trinity Physician Fin. & Ins. Serv's*, 780 F.3d 1101, 107 (11th Cir. 2015); *Harris v. World Fin. Network Nat'l Bank*, 867 F. Supp. 2d 888, 895 (E.D. Mich. 2012) ("Such a broad application of 'willful[ ]' or 'knowing' would significantly diminish the statute's distinction between violations that do not require an intent, and those willful[ ] and knowing violations that [C]ongress intended to punish more severely.")).

In *Litz v. My Car Warrior, LLC*, 2020 WL 3546129 (S.D. Ind. June 30, 2020), the court discussed the required showing of willful or knowing to award damages. In that case, like Plaintiff here, the plaintiff's telephone number was listed on the National Do Not Call registry prior to receiving the unsolicited calls from the defendant. "Thus, My Car Warrior knew or should have known the advertisement was unsolicited." *Id.* at *4. Notwithstanding the telephone number being listed on the National Do Not Call registry, the defendant called the plaintiff's telephone number. In light of these facts, the court concluded the TCPA violation was willful or knowing, and awarded damages accordingly. *See also Shelton v. Fast Advance Funding, LLC*, 378 F. Supp. 3d 356, 363 (E.D. Pa. May 8,

2019) (awarding treble damages where the subject number was on the National Do Not Call registry and the defendant did not "scrub" the registry).

Here, Plaintiff alleged in his cellular telephone number has been on the National "Do Not Call" registry since December 9, 2004. Nonetheless, on November 24, 2020 Plaintiff received a telephone call on his cellular device from a purported agent of TIB to discuss Plaintiff's Medicare plan. In light of the foregoing, it appears Plaintiff sufficiently pleaded entitlement to treble damages for the first telemarketing call, if liability is ultimately found.

However, during the first telephone conversation with the telemarketing agent, Plaintiff provided a name and (at least impliedly) expressed a desire to be contacted in the future to further discuss insurance options. In other words, Plaintiff gave the company consent to call him on his cellular telephone to discuss health plans. On November 25, 2020, Plaintiff received such a call and engaged in a conversation wherein health care plans were discussed. Because Plaintiff impliedly consented to receive an additional call on his cellular telephone, he should not be entitled to treble damages for it, if the second call is found to constitute a violation of the TCPA.

   5. Defendants' Motion to Strike (ECF No. 16)

As discussed above, Plaintiff's amended complaint was not properly filed—the time to amend as of right had run and Plaintiff did not seek leave to amend. Defendants' motion to strike should be granted.

In the alternative, should the Court consider the amended complaint as a request for leave to amend, based on the foregoing analysis, leave to amend should be denied because amendment would be futile.  If the Court takes this route, the motion to dismiss the amended complaint should be granted.

## IV.    RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that Defendants' motion to dismiss (ECF No. 5) be **GRANTED IN PART AND DENIED IN PART**.  Specifically, it is **RECOMMENDED** that the claims against Defendant Southwell be **DISMISSED** for failure to state a claim, that Plaintiff's "Bad Caller ID" claim be **DISMISSED** for lack of private cause of action, and that, if liability is found on the remaining TCPA claims, the Plaintiff's claim for treble damages be **DISMISSED** with regard to the second telemarketing call.

The undersigned further **RECOMMENDS** Defendants' motion to strike the amended complaint (ECF No. 16) be **GRANTED**, or in the alternative, be **GRANTED** dismissing the amended complaint.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service,

as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date:  May 14, 2021                    s/Curtis Ivy, Jr.
                                       Curtis Ivy, Jr.
                                       United States Magistrate Judge

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on May 14, 2021, by electronic means and/or ordinary mail.

<u>s/Kristen MacKay</u>
Case Manager
(810) 341-7850